**BALABAN & SPIELBERGER, LLP**
Daniel K. Balaban, SBN 243652
Daniel@dbaslaw.com
Andrew J. Spielberger, SBN 120231
Andrew@dbaslaw.com
11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
Tel: (424) 832-7677
Fax: (424) 832-7702

**ARIAS SANGUINETTI WANG & TORRIJOS**
Alfredo Torrijos, SBN 222458
Alfredo@aswtlawyers.com
701 Center Drive West, 14th Floor
Los Angeles, CA 90045
Tel: (310) 844-9696

**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
Aaron M. Panner* (D.C. Bar No. 453608)
apanner@kellogghansen.com
Collin R. White* (D.C. Bar No. 1031005)
cwhite@kellogghansen.com
Bethan Jones* (D.C. Bar No. 156261)
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900

Attorneys for Defendants Intellisoft, Ltd. and Bruce Bierman

*Pro Hac Vice*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACER AMERICA CORPORATION, a California Corporation, and ACER INCORPORATED, a Taiwan Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>INTELLISOFT, LTD., a Delaware Corporation, and BRUCE BIERMAN, an individual,<br><br>Defendants. | Case No.: 4:20-cv-08608-PJH<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Phyllis J. Hamilton<br>Date: March 4, 2021<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ........................................1

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

    A.     Mr. Bierman's Development of the "Bookmark" Software ...................................2

    B.     Mr. Bierman and Intellisoft's State Law Claims Against Acer ..............................3

    C.     Acer Defends Its Inventorship In State Court ........................................................4

    D.     Acer's Last-Ditch Removal and Proceedings in Federal Court ..............................5

    E.     The Federal Circuit Remands the Case to State Court .............................................7

    F.     The State Court Denies Acer's Motion For Leave To File Its Cross-Complaint .......8

STANDARD FOR DISMISSAL ...........................................................................................9

ARGUMENT ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ...................................................................9

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ...................................................................11, 13

*Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113 (9th Cir. 1999)..............................16, 17

*Arkema Inc. v. Honeywell Int'l Inc.*, 706 F.3d 1351 (Fed. Cir. 2013) .......................................13

*Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368 (Fed. Cir. 2011) .............................14

*ATMI, Inc. v. Innovative Eng'g Sols., Inc.*,
    2002 WL 826794 (N.D. Cal. Apr. 29, 2002) ...........................................................................11

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*,
    104 F. Supp. 3d 1023 (E.D. Cal. 2015) ..................................................................................11

*Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007)....................................14

*Bierman v. IBM Corp.*, 547 F. App'x 851 (9th Cir. 2013)..........................................................3

*Bierman v. Toshiba Corp.*, 2014 WL 5293115 (Cal. Super. Ct. Sept. 15, 2014).........................3

*Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*,
    892 F. Supp. 2d 1226 (N.D. Cal. 2012), *aff'd*, 538 F. App'x 894 (Fed. Cir. 2013) ............14

*Clay Reg'l Water v. City of Spirit Lake, Iowa*,
    193 F. Supp. 2d 1129 (N.D. Iowa 2002) ................................................................................17

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
    819 F.2d 1519 (9th Cir. 1987).................................................................................................17

*Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir. 1991), *overruled on other*
    *grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998....................16, 17

*Cont'l Ill. Secs. Litig., In re*, 985 F.2d 867 (7th Cir. 1993).......................................................15

*Crossbow Tech., Inc. v. YH, Tech.*, 531 F. Supp. 2d 1117 (N.D. Cal. 2007)................................11

*Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338 (Fed. Cir. 2010) ...........................................12

*Expensify, Inc. v. White*, 2019 WL 5295064 (N.D. Cal. Oct. 18, 2019),
    *aff'd*, 2020 WL 7311586 (9th Cir. Dec. 11, 2020) ...............................................................11

*Fid. & Cas. Co. v. Rsrv. Ins. Co.*, 596 F.2d 914 (9th Cir. 1979).................................................9

*Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997) ..........................................10-11

*Fortinet, Inc. v. Trend Micro Inc.*, 2009 WL 1814598 (N.D. Cal. June 24, 2009)........................11

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ................................................................................................................. 9

*Genifuel Corp. v. Oyler*, 2012 WL 1032782 (D. Utah Mar. 27, 2012) ........................................ 12

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953 (Fed. Cir. 1987) ..................... 13

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ...................................... 16, 18

*Induction Innovations, Inc. v. Pacholok*,
   2014 WL 4922350 (N.D. Ill. Sept. 30, 2014) ................................................................. 12

*Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927 (Fed. Cir. 2020) .............................. 7, 8, 13, 15

*Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266 (8th Cir. 1995) ............................. 17

*Krauser v. BioHorizons, Inc.*, 753 F.3d 1263 (Fed. Cir. 2014) .................................................... 12

*Machat v. Sklar*, 1997 WL 599384 (S.D.N.Y. Sept. 29, 1997) .................................................... 17

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ................................................... 10, 12

*Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191 (2014) .................................. 10

*Nwogu, In re*, 570 F. App'x 919 (Fed. Cir. 2014) ....................................................................... 15

*Preston v. Nagel*, 857 F.3d 1382 (Fed. Cir. 2017) ..................................................................... 8, 9

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
   2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ................................................................ 10

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966 (9th Cir. 2011) .............................. 16, 17, 18

*Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151 (9th Cir. 2007) .................................................... 10

*Rosenthal v. Coates*, 148 U.S. 142 (1893) .................................................................................. 18

*StoneEagle Servs., Inc. v. Gillman*, 746 F.3d 1059 (Fed. Cir. 2014) ......................................... 14

*t'Bear v. Forman*, 359 F. Supp. 3d 882 (N.D. Cal. 2019) ........................................................... 16

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330 (Fed. Cir. 2007) ................. 13

*Travelers Indem. Co. of Conn. v. Newlin*, 2020 WL 5517591 (S.D. Cal. Sept. 14, 2020) ............. 16

*United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) ..................................................... 16

*Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002) ...................................... 13

*VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*,
   2019 WL 4805771 (S.D.N.Y. Sept. 30, 2019) ................................................................ 13

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................................... 10

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ......................................................................... 16

**STATUTES**

28 U.S.C. § 1454 ................................................................................................................15

28 U.S.C. § 2201 ................................................................................................................10

35 U.S.C. § 256 ..............................................................................................................1, 6

<u>**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**</u>

**PLEASE TAKE NOTICE THAT** on March 4, 2021 at 1:30 p.m., or as soon thereafter as this matter can be heard before the Honorable Phyllis J. Hamilton of the United States District Court for Northern District of California, Defendants Bruce Bierman and Intellisoft, Ltd. will and hereby do move for an order dismissing Acer America Corporation and Acer, Inc.'s (together, "Acer") Complaint for Declaratory Relief.

This Motion is brought pursuant to Rule 12(b)(l) of the Federal Rules of Civil Procedure to dismiss Acer's Complaint for Declaratory Relief on the basis that this Court lacks subject matter jurisdiction because there is no "actual controversy" under Article III of the United States Constitution.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, on all records and papers filed in this action, and upon such oral argument and submissions that may be presented at or before the hearing of this Motion.

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**INTRODUCTION**

It is past time for the federal courts to be done with this case.  Years of litigation in state court have now, for a second time, left Acer unable to avoid trial for its misappropriation of trade secrets that Bruce Bierman created and his company, Intellisoft, Ltd., now owns.  As the Court knows from its prior encounter with this dispute about those trade secrets and their improper disclosure in the '713 Family of Patents, Acer's last effort to obstruct that outcome yielded a years-long detour through every level of the federal courts, yet ended in remand.  Acer now seeks a declaratory judgment holding that Mr. Bierman properly was not named as an inventor on those patents, but the Court lacks jurisdiction.  The Court should accordingly dismiss Acer's complaint.

*First*, there is no controversy between the parties about inventorship under 35 U.S.C. § 256, and thus no conceivable basis on which this Court has subject-matter jurisdiction to grant Acer's request for a declaratory judgment.  Mr. Bierman already has unequivocally covenanted *not* to sue Acer – without condition or exception – for a correction of inventorship as to the patents at issue, and any inventorship controversy – about patents that are expired and beyond the limitations period – is thus moot.  Intellisoft's contention, in state court, that ideas disclosed in the

1   patents are trade secrets belonging to Intellisoft does not create a legal dispute that supports

2   federal subject-matter jurisdiction because, as the Federal Circuit confirmed, Intellisoft's state law

3   claims do not implicate, much less depend on, a claim that Mr. Bierman should have been named

4   an inventor of the patents under federal law.  In the absence of a controversy as to a legal right, the

5   financial and reputational interests Acer asserts in the Complaint are insufficient to create

6   declaratory judgment jurisdiction.

7         *Second*, even if there were a controversy with respect to inventorship sufficient to establish

8   subject-matter jurisdiction – and there is not – it would be an abuse of discretion to exercise such

9   jurisdiction in the circumstances of this case.  The Ninth Circuit has held that a court's substantial

10  discretion to dismiss declaratory actions should be exercised to discourage forum shopping, which

11  is exactly what Acer's action is.  Dismissing this case will prevent Acer from wasting yet more of

12  the Court's time and the parties' resources resolving a patent-law dispute that does not exist and

13  never will.

14                                    **BACKGROUND**

15    **A.      Mr. Bierman's Development of the "Bookmark" Software**

16         In the late 1970s and early 1980s, Bruce Bierman was a successful inventor.  In 1984, Mr.

17  Bierman developed software called "Bookmark," which allowed a computer to "save and restore

18  its system state to a pre-power-down state or a user defined state."  Dkt. 21-1 at 7-11 (Ex. A ¶¶ 14-

19  24).[1]  He formed the business that became Intellisoft to promote his invention, but after several

20  years of successfully marketing Bookmark, Mr. Bierman left the industry to pursue other ventures.

21  *See id.* ¶ 17.

22         Decades later, in 2010, Acer's current counsel contacted Mr. Bierman regarding "[his]

23  creation of [B]ookmark and other aspects of hibernation technology," to help defend a patent-

24  infringement lawsuit.  Dkt. 72-3 at 35 (Ex. 37).  They explained that he "may be the true inventor

25  of" the patented invention asserted in that separate litigation, which related to a Bookmark feature

26

27  _____

28         [1] Unless otherwise indicated, all references to "Dkt. __" are to documents filed in
    *Intellisoft, Ltd. v. ACER America Corp.*, No. 4:17-cv-06272-PJH (N.D. Cal.).

1  called "password resume." *Id.* In connection with that engagement, Mr. Bierman came across

2  materials that led him to investigate intellectual-property claims against IBM, Toshiba, and Acer.[2]

3  **B.      Mr. Bierman and Intellisoft's State Law Claims Against Acer**

4          In March 2014, Mr. Bierman and Intellisoft sued Acer in California state court.[3] As

5  alleged in that case, in late 1990, Acer contacted Mr. Bierman about licensing Bookmark. *See*

6  Dkt. 21-1 at 21-22 (Ex. A ¶¶ 29-30). As a condition of the parties' discussions, Acer signed a

7  non-disclosure agreement, promising not to disclose confidential information that Mr. Bierman

8  and Intellisoft shared with it. *Id.* at 21 (¶ 29). After Acer explained that it was not interested in

9  licensing Bookmark itself, Mr. Bierman and Intellisoft proposed to customize a product that would

10  combine features of Bookmark with other hardware to form a "smart power supply." *Id.* at 24-29

11  (¶¶ 40-44). The technology would empower a user to turn a computer off and back on while

12  managing the computer's power supply and permitting the user quickly to restore their work. *Id.*

13          Acer accepted Intellisoft's proposal on January 2, 1992, and Intellisoft executed a license

14  agreement allowing Acer to use Intellisoft's technology. *Id.* at 30-31 (¶ 49). Unbeknownst to Mr.

15  Bierman, however, on that same day, Acer applied for a patent that also concerned power-

16  management technology. *Id.* at 30 (¶ 50). When issued, that patent – U.S. Patent No. 5,410,713,

17  titled "Power-Management System for a Computer" – disclosed Intellisoft's trade secrets. *Id.* 31-

18  33 (¶¶ 50-58). Acer also secured three additional related patents (collectively, with the '713

19  patent, the "'713 Family of Patents") that similarly relied upon Intellisoft's confidential

20  information. *Id.* at 33 (¶ 59).

21

22

23          [2] Mr. Bierman's suits against IBM and Toshiba primarily concerned software related to

24  "password resume" and did not concern the smart power supply at issue in Mr. Bierman's case
   against Acer. *See Bierman v. IBM Corp.*, No. 10-cv-4199-PJH (N.D. Cal.); *Intellisoft, Ltd. v. IBM*

25  *Corp.*, No. 12-cv-1462-PJH (N.D. Cal.); *Bierman v. Toshiba Corp.*, No. CIV 1004032 (Cal. Super.
   Ct.). The cases against IBM and Toshiba ended after those defendants successfully mounted

26  statute-of-limitations defenses. *See Bierman v. IBM Corp.*, 547 F. App'x 851 (9th Cir. 2013);
   *Bierman v. Toshiba Corp.*, 2014 WL 5293115, at *1 (Cal. Super. Ct. Sept. 15, 2014).

27          [3] Mr. Bierman was originally a plaintiff, but he assigned his claims to Intellisoft early in

28  the litigation.

After discovering this wrongdoing only many years later, Mr. Bierman and Intellisoft sued Acer in California state court seeking damages under state law for misappropriation of trade secrets, intentional misrepresentation and fraudulent concealment, and breach of contract; an accounting; and injunctive relief.  *Id.* at 34-44 (¶¶ 63-101); prayer for relief.  Mr. Bierman did not seek, and has never sought, a correction of inventorship under federal patent law.

## C.    Acer Defends Its Inventorship In State Court

As the California state court recently observed, from the beginning of the case, it was clear that Mr. Bierman was alleging that the ideas underlying the '713 Family of Patents are trade secrets belonging to his company.  *See* Ex. 1, Order at 4.  Mr. Bierman was deposed and repeatedly asked about both his power-supply invention and the '713 patent.  *See* Dkt. 72-2 at 247 (Ex. 12 at 497:16-21).  And, in written discovery, Intellisoft made clear its view that Mr. Bierman had "clearly and succinctly set forth when and how he conceived of the trade secrets at issue in this litigation."  Dkt. 72-4 at 119 (Ex. 46 at 9).  Acer repeatedly sought to defeat this claim on the merits.

*First*, in October 2016, Acer moved for summary judgment.  Acer observed that "[t]he parties' primary difference goes to who is responsible for the invention of a certain power management system comprised primarily of hardware components, which was ultimately embodied in" the '713 Family of Patents, and "contend[ed] that Mr. Bierman's claim to have conceived the ideas that led to the '713 Patent is fabricated."  Dkt. 21-1 at 104 (Ex. G at 2).  The court substantially denied Acer's motion.  As relevant here, the court rejected Acer's argument that Intellisoft could not prove damages, explaining that Intellisoft would be seeking "damages on an unpaid royalty theory," and that Acer had "failed to meet [its] burden to show summary adjudication of the" breach of contract claim was "proper."  Dkt. 72-2 at 18 (Ex. 1 at 17).

*Second*, in April 2017, Acer moved in limine to exclude Intellisoft's damages theory on the ground that Intellisoft was asserting "a patent infringement theory based on," and conflicting with, "patent law."  Dkt. 21-1 at 132 (Ex. J at 5).  Acer also argued that evidence about "the meaning and scope of a patent" should have been excluded because "[o]nly a federal district court may interpret and construe the meaning and scope of a patent."  *Id.* at 138 (Ex. J at 11).  The state court

denied that motion, too.  It rejected Acer's arguments as "without merit," and explained that "state contract and trade secret law on the one hand and federal patent law on the other hand, while addressing the common subject matter of commercial inventions and ideas, establish different protections and remedies to somewhat different ends."  *Id.*  Further, the court explained that "[b]ecause [Intellisoft] chose to keep its technology a secret rather than to attempt to patent it, it is contract and trade secret law that govern here – the fact that *[Acer]* obtained patents does not define the source and scope of [Intellisoft's] rights."  *Id.*

Intellisoft's experts disclosed opinions consistent with this distinction.  Intellisoft's expert, Robert Zeidman, provided charts explaining how the '713 Family of Patents discloses Intellisoft's innovation and analyzed where Acer had used Intellisoft's confidential trade secret information.  *See generally* Dkt. 28-1 at 55 (Ex. Q).  Brian Napper then estimated damages on that basis, analyzing Intellisoft's lost profits using an unpaid royalty theory whereby he applied "a royalty amount pursuant to the" agreement between Acer and Intellisoft, "adjusted for the decline in computer prices over the damages timeframe," to the number of units Acer sold.  *Id.* at 193-94 (Ex. T ¶¶ 21-22).  Finally, Irving Rappaport testified regarding Acer's liability.  Referring to the '713 Family of Patents to show misappropriation, Mr. Rappaport explained that Intellisoft's claim was not a patent theory that requires claim construction and an infringement analysis; instead, "Mr. Zeidman's charts show exactly the one-to-one correspondence between the Intellisoft trade secrets and confidential information disclosed to Acer under the 1990 NDA and the descriptions in the '713 patent family."  *Id.* at 24 (Ex. O ¶ 25); *see also* Dkt. 21-1 at 58-59 (Ex. C at 24:18-25:2) ("[I]t's important to emphasize, this is not a patent case.  The only reason we're talking about patents here is the fact that the patents are the documents that show how the trade secrets of Intellisoft were misappropriated, how the September 1990 NDA was breached, and the ensuing and unjust enrichment of Acer at the expense of Intellisoft and Mr. Bierman.  This is fundamentally a trade secret case, not a patent case.").

### D.    Acer's Last-Ditch Removal and Proceedings in Federal Court

After defending the case on the merits for years in state court, three weeks before trial – and without securing the state court's leave to assert a counterclaim (as required by California

state law) – Acer purported to submit a counterclaim for a declaratory judgment confirming

inventorship under 35 U.S.C. § 256.  The same day, Acer filed a notice of removal.  Intellisoft

moved to remand the case back to state court, but this Court denied that motion.  This Court's

holding rested primarily on two conclusions.  It concluded that because Intellisoft's state law

claim "necessarily calls into question the named inventors of the '713 Family of Patents," those

claims reduced to an inventorship challenge governed by § 256.  Dkt. 35 at 8 (Remand Order).

And it understood Mr. Zeidman's analysis to raise issues of claim construction and infringement

because comparing the trade secret to the '713 Family of Patents, and the '713 Family of Patents

to the ACPI industry standard, "entails construing claims within and the scope of the '713 Family

of Patents."  *Id.* at 9.[4]

Intellisoft and Mr. Bierman then moved to dismiss Acer's declaratory-judgment

counterclaim.  In support of the motion, Mr. Bierman "unequivocally and unconditionally

covenant[ed]" that neither he nor Intellisoft would seek "to be named as an inventor or as a co-

inventor of" the '713 Family of Patents under § 256.  Dkt. 48 at 33-44 (Bierman Decl. ¶¶ 3, 7).

Mr. Bierman, on behalf of himself and Intellisoft, also "disclaim[ed] and waive[d] any interest in

being named as an inventor or co-inventor for United States Patent Numbers 5,410,713 and its

Continuation Patents: 5,870,613; 5,884,087 and 5,903,765," *id.* (¶¶ 5, 9), and further agreed he

and Intellisoft would be "estopped from asserting in this lawsuit (and any lawsuit) that Intellisoft,

Ltd. and/or I should have been named or should be named as an inventor or co-inventor on" the

patents, *id.* (¶¶ 6, 10).  In addition, Intellisoft's expert, Mr. Rappaport, submitted a declaration

affirming that he would not testify that Mr. Bierman or Intellisoft should have been a named

inventor, as defined by the federal patent laws, on the '713 patents.  Dkt. 48 at 37 (Rappaport

Decl. ¶ 3).  The Court denied the motion as well, referring to the reasoning in its order denying

Intellisoft's motion to remand.  The Court found that because Intellisoft's trade secret claim called

---

[4] The Court also concluded that removal was timely under the removal statute, accepting Acer's claim that their receipt of the expert reports on September 28 and 29, 2017, was the first time removability of the case had been ascertained.  *See* Dkt. 35 at 22-23 (Remand Order).

inventorship into question, there remained a justiciable controversy.  *See* Dkt. 57 at 10 (Mot. To Dismiss Order).

Thereafter, the Court granted Acer's motion for summary judgment.  Concluding that "the scope of the technology claimed by the '713 patent is coterminous with the technology described by plaintiff's trade secret designation," the Court determined Intellisoft could prevail only if it satisfied patent law's heightened standards for challenging inventorship.  Dkt. 86 at 7 (Summ. J. Order).  And, as Intellisoft had conceded, the Court held Intellisoft could not satisfy this standard.  As ordered, the parties met and conferred and agreed to dispose of Acer's counterclaim by stipulation.

**E.     The Federal Circuit Remands the Case to State Court**

After the Court disposed of the case, Intellisoft appealed to the Federal Circuit on the ground that the Court should have granted Intellisoft's motion to remand.  The Federal Circuit agreed and vacated the Court's judgment.  The Federal Circuit considered and rejected Acer's argument that Intellisoft's trade secrets misappropriation claim necessarily raised patent law issues because (1) Intellisoft had to prove Mr. Bierman was the sole inventor to establish ownership of the trade secrets and (2) Intellisoft's expert offered a claim construction and infringement analysis to show liability and damages.  It did so for three reasons:

**1.**     "Intellisoft did not need to prove inventorship under federal law to establish ownership." *Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 932 (Fed. Cir. 2020), *cert. denied*, No. 20-313, 2020 WL 6037253 (U.S. Oct. 13, 2020).  The Federal Circuit acknowledged that Mr. Rappaport had stated during a deposition that Mr. Bierman was an inventor of the claims in the '713 patent family "as a factual matter," but clarified that this was irrelevant because "Intellisoft did not need to prove that statement was true but needed to show only that Intellisoft by assignment from Bierman was the owner of the trade secrets." *Id.*

**2.**     "Intellisoft did not need to establish patent infringement to prove trade secrets misappropriation." *Id.*  Again, the Federal Circuit acknowledged that Mr. Zeidman had provided charts explaining how the '713 Family of Patents discloses Intellisoft's innovation.  But this did not matter because "[t]he '713 patent family was only being used as evidence to support

1   Intellisoft's state law claims.  [Mr. Zeidman's] analysis required no construction of the patent

2   claims or proof that Acer's products 'infringed' the '713 patent family."  *Id.*

3       **3.**       "Intellisoft's damages case did not necessarily depend on the resolution of patent

4   law issues."  *Id.*  While "Mr. Napper calculated damages in the form of royalties that Intellisoft

5   would have received from Acer for using the trade secrets since 1997, assuming a royalty rate

6   from the parties' 1992 software agreement," the Federal Circuit explained that "this agreement

7   was a software license for Intellisoft's Bookmark product and it neither included a patent license

8   nor referenced the '713 patent family."  *Id.*  The court also found that "Mr. Napper's damages

9   calculation also presumed that Acer's products incorporated the trade secrets based on Mr.

10  Zeidman's analysis.  To prove such damages, however, Intellisoft did not need to establish that

11  Acer's products infringed the '713 patent family."  *Id.*

12      Acer argued in the alternative that removal was proper under § 1454, based on its

13  inventorship counterclaim.  The Federal Circuit rejected this argument because "Acer's cross-

14  complaint was not a legally operative pleading when it removed the action."  *Id.* at 934.  In

15  rejecting Acer's argument that its state-court counterclaim, whether or not it was legally operative,

16  should have been treated as "asserted" for purposes of the removal statute, the Court noted that

17  applying such state procedural rules would not undermine any federal rights since, if the state

18  court had denied Acer leave to file the patent counterclaim, Acer "had 'an alternative way to

19  present [its] patent claim[] on the merits in federal court:  a separate federal declaratory judgment

20  action.'"  *Id.* at 935 (quoting *Preston v. Nagel*, 857 F.3d 1382, 1386 (Fed. Cir. 2017)).  Because

21  the Federal Circuit concluded the Court had erred in denying Intellisoft's motion for remand, it did

22  not resolve the question of whether removal was untimely or waived.  *See id.* at 936.

23      **F.    The State Court Denies Acer's Motion For Leave To File Its Cross-Complaint**

24      Acting on the Federal Circuit's ruling, this Court remanded the case to state court.  Acer

25  sought leave to file the cross-complaint that it had lodged with the state court before its improper

26  removal.  In the motion, Acer again attempted to justify its delay in seeking leave by claiming that

27  "it was not until September of 2017 that expert discovery revealed . . . that Intellisoft's case was in

28  fact based on substantial issues of patent law."  Ex. 1, Order at 4 (quotation marks omitted).

On November 30, 2020, the state court denied Acer's motion, flatly rejecting its purported reason for delay as "contradicted by the allegations of the operative Fourth Amended Complaint, which discuss at length the relevant patents and their alleged disclosure of Intellisoft's technology, invented by Bierman," and also observing that "[t]he original complaint included much of the same discussion and attached the '713 Patent as an exhibit." *Id.* at 4. The state court then considered "whether the proposed cross-complaint [was] demurrable," *id.* at 5, and concluded it was. The court explained "[a]ll parties agree that the patents at issue are all expired, and Intellisoft and Bierman filed covenants not to sue concerning inventorship when the case was in federal district court . . . The need for a declaration concerning inventorship hence seems questionable." *Id.* Further, the court determined that "Acer's admitted plan to again remove this action to federal court suggests that its proposed cross-complaint is an attempt to forum shop, rather than to obtain sincerely needed additional guidance from the courts." *Id.*

Shortly after the state court denied its motion, Acer filed its same request for a declaratory judgment in federal court. Acer seeks a declaration that Mr. Bierman properly was not named as an inventor on the '713 Family of Patents. *See* Acer Compl. for Declaratory Relief ¶¶ 50-59, Dec. 4, 2020 ("Acer Compl."); prayer for relief.

### STANDARD FOR DISMISSAL

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "does not itself confer federal subject-matter jurisdiction"; rather, a plaintiff seeking a declaratory judgment must independently establish that it has standing to seek relief. *Fid. & Cas. Co. v. Rsrv. Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 17 (1983) ("the Declaratory Judgment Act was intended to affect only the remedies available in a federal district court, not the court's jurisdiction."). The "actual controversy" requirement refers to the types of "cases" and "controversies" that are justiciable under Article III of the U.S. Constitution. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240

1   (1937).  "[T]he question in each case is whether the facts alleged, under all the circumstances,

2   show that there is a substantial controversy, between parties having adverse legal interests, of

3   sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune,*

4   *Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation marks and citation omitted).

5          "Absent a true case or controversy, a complaint solely for declaratory relief under 28

6   U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)."  *Rhoades v. Avon Prods.,*

7   *Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).  Where, as here, the defendant raises a factual challenge

8   to the court's jurisdiction, the court may consider extrinsic evidence "without having to convert

9   the motion into one for summary judgment."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

10  "A party seeking to base subject matter jurisdiction on the Declaratory Judgment Act bears the

11  burden of showing an 'actual controversy.'"  *Proofpoint, Inc. v. InNova Patent Licensing, LLC*,

12  2011 WL 4915847, at *2 (N.D. Cal. Oct. 17, 2011) (citation omitted).

13                                    **ARGUMENT**

14  **THIS COURT LACKS JURISDICTION BECAUSE MR. BIERMAN'S COVENANT
    NOT TO SEEK CORRECTION OF INVENTORSHIP ELIMINATES ANY**
15  **JUSTICIABLE CONTROVERSY BETWEEN THE PARTIES**

16         **1.**     To determine declaratory judgment jurisdiction, this Court must "look to the

17  corresponding action that [Intellisoft and Mr. Bierman] would have brought, *i.e.*, an action for

18  correction of inventorship under 35 U.S.C. § 256."  *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d

19  1466, 1470 (Fed. Cir. 1997); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191,

20  197 (2014) ("federal courts, when determining declaratory judgment jurisdiction, often look to the

21  'character of the threatened action.'" (citation omitted)).  Because Mr. Bierman's unequivocal and

22  unconditional covenant not to sue (or ever to have Intellisoft sue) Acer to seek correction of

23  inventorship under § 256 eliminates any justiciable controversy between the parties with respect of

24  the question of inventorship, this Court lacks jurisdiction over Acer's declaratory action.

25         No federal court has ever exercised jurisdiction over an action seeking to declare that a

26  recorded inventorship is correct in the absence of some "reasonable apprehension" of a suit to

27  correct ownership, *see Fina Oil & Chem. Co.*, 123 F.3d at 1471 (a plaintiff seeking such a decree

28  must establish:  (1) that the plaintiff holds a recognized interest in the patent that "could be

adversely affected by an action brought under section 256"; and (2) that "another party with a right to bring an action under section 256 has created in the declaratory plaintiff a reasonable apprehension that it will do so"), or, following *MedImmune*, some concrete adverse legal interest between the parties with respect to the question of inventorship, *see Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc*., 104 F. Supp. 3d 1023, 1033-34 (E.D. Cal. 2015) (court lacked jurisdiction to declare inventorship where plaintiff had "not pleaded the existence of 'another party' with the right to bring an inventorship claim").  The reason is simple:  Article III precludes federal courts from deciding moot questions.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

That principle requires dismissal here.  Mr. Bierman's covenant not to sue Acer extinguishes *any* possibility that the parties have now (or will ever have in the future) adverse legal interests on the question of inventorship.  Furthermore, because the patents are all expired and beyond the limitations period, their owner cannot enforce the patents against anyone else.  The patent-law question of inventorship can never arise in court; the Declaratory Judgment Act does not generate the basis for a lawsuit that could otherwise never exist.

This Court repeatedly has recognized that a covenant not to sue extinguishes any controversy between the parties as to the questions the covenant encompasses.  *See Crossbow Tech., Inc. v. YH Tech*., 531 F. Supp. 2d 1117, 1124 (N.D. Cal. 2007) (patent holder's covenant not to sue competitor was exhaustive of all potentially infringing products rendering moot competitor's invalidity and non-infringement counterclaims).[5]  Mr. Bierman's covenant not to sue explicitly encompasses § 256, and further prohibits him from making "any claim or assertion in any action to be named as an inventor or as a coinventor of [the '713 Family of Patents]."  Dkt. 48 at 33-44 (Bierman Decl. ¶¶ 3, 7).  The covenant is broad, unequivocal, and "has no conditions and no exceptions."  *Id*. ¶¶ 4, 8.  Mr. Bierman goes so far as to "disclaim and waive any interest in

---

[5] *See also Fortinet, Inc. v. Trend Micro Inc*., 2009 WL 1814598, at *1 (N.D. Cal. June 24, 2009) ("unconditional[]" and "irrevocabl[e]" covenants not to sue plaintiff for infringement mooted action seeking declaration of non-infringement and invalidity); *ATMI, Inc. v. Innovative Eng'g Sols., Inc.*, 2002 WL 826794, at *2 (N.D. Cal. Apr. 29, 2002) (same); *Expensify, Inc. v. White*, 2019 WL 5295064, at *6 (N.D. Cal. Oct. 18, 2019), *aff'd*, 2020 WL 7311586 (9th Cir. Dec. 11, 2020) (covenant not to sue mooted declaratory action relating to purported Americans with Disabilities Act violations).

being named as an inventor or co-inventor," *id.* ¶¶ 5, 9, and concede that he will be estopped from arguing that he should have been a named inventor or co-inventor on any of the patents, *id.* ¶¶ 6, 10. Under these circumstances, there is no controversy – much less a "substantial controversy . . . of sufficient immediacy and reality," *MedImmune*, 549 U.S. at 127 – warranting a declaration that Mr. Bierman properly was not named as an inventor on any of the '713 Patent Family.

The court in *Genifuel Corp. v. Oyler*, 2012 WL 1032782 (D. Utah Mar. 27, 2012), dismissed a declaratory action as moot based on similar facts. There, the plaintiff sought a declaratory judgment that he was the sole inventor of certain patents in response to the defendant's public and private statements claiming to have been a co-inventor. *See id.* at *1. The Court determined that it lacked jurisdiction over the action because, in assigning his intellectual property rights in the patents to plaintiff, the defendant had covenanted not to "directly or indirectly" bring any claim "challenging the validity of the [patents]." *Id.* at *2; *see also Induction Innovations, Inc. v. Pacholok*, 2014 WL 4922350, at *8 (N.D. Ill. Sept. 30, 2014) (court lacked jurisdiction over action by named inventor to declare inventorship because defendant's covenant not to sue eliminated controversy). The Federal Circuit has similarly dismissed as moot infringement cases and claims of invalidity and unenforceability where, as here, a covenant not to sue "eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010) (collecting cases); *cf. Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1268-69 (Fed. Cir. 2014) (individual's decision to eliminate his inventorship claim deprived the court of jurisdiction).

Furthermore, even if the possibility that later enforcement of patents against third parties could provide a basis for declaratory judgment jurisdiction, it cannot here, because all of the patents at issue are expired and beyond the six-year limitations period. Quite simply, the federal-law question of the proper inventorship of the '713 Family of Patents is an issue that does not matter to anyone or anything.

**2.** This Court's prior determination that Mr. Bierman's covenant not to sue Acer did not extinguish all controversy between the parties relied on its understanding that Intellisoft's state law action "necessarily calls into question the named inventors of the '713 Family of Patents."

Dkt. 35 at 8 (Remand Order); *see, e.g., VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, 2019 WL 4805771, at *15 (S.D.N.Y. Sept. 30, 2019) (distinguishing this Court's ruling on the basis that the Court "had already found that the question of inventorship was necessary to granting plaintiff's relief"). But the Federal Circuit has since clarified that Intellisoft's burden in the state action is "to satisfy the ownership standards for trade secrets under California law rather than to prove that Bierman is the inventor of the '713 patent family, and ownership under state law d[oes] not require proof of patent inventorship." *Intellisoft*, 955 F.3d at 932. The Federal Circuit further confirmed that Intellisoft's state law claims do not require "construction of the ['713 Family of Patents]" and its "damages case d[oes] not necessarily depend on the resolution of patent law issues." *Id.* The Federal Circuit's opinion forecloses any argument that the question of inventorship is legally relevant to Intellisoft's state law claims.[6]

All that remains is Intellisoft's *factual* assertion in state court that Mr. Bierman conceived of the ideas disclosed in the '713 Family of Patents. But the parties' factual disagreement is not sufficient to create a live inventorship controversy because that "dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (citation omitted). That is because "[w]ithout an underlying legal cause of action, any adverse

---

[6] Accordingly, the cases cited in the Court's Order denying Intellisoft's motion to dismiss no longer support jurisdiction. In *Goodyear Tire & Rubber Co. v. Releasomers, Inc*., 824 F.2d 953 (Fed. Cir. 1987), the court found that, "[b]y suing Goodyear in state court for the same technology as is now covered by the patents, Releasomers has engaged in a course of conduct that shows a willingness to protect that technology," and thus "a reasonable party could easily infer that Releasomers would, at some time, bring a patent infringement suit against Goodyear," *id.* at 956. There was no covenant not to sue in *Goodyear*, as there is here, which extinguishes any possibility that Mr. Bierman will ever sue for a correction of inventorship. The same distinction renders inapposite *Arkema Inc. v. Honeywell International Inc*., 706 F.3d 1351 (Fed. Cir. 2013), *id.* at 1358 ("Honeywell has declined to grant Arkema a covenant not to sue on the '120 and '882 patents, which further suggests that there is an active and substantial controversy between the parties regarding their legal rights with respect to those patents") and *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp*., 482 F.3d 1330 (Fed. Cir. 2007), *id.* at 1335, 1345 ("Novartis had declined to give Teva a covenant not to sue," which "creates uncertainty as to Teva's legal rights under its ANDA"). Similarly, in *Vanguard Research, Inc. v. PEAT, Inc*., 304 F.3d 1249 (Fed. Cir. 2002), the court concluded that Vanguard had "a reasonable apprehension that PEAT would sue it for patent infringement in the future" because PEAT had sued Vanguard for misappropriation of trade secrets and informed Vanguard's clients of the suit, *id.* at 1255. Here, the covenant not to sue removes any uncertainty as to the parties' respective legal interests.

economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343, 1344 (Fed. Cir. 2007) (citation omitted) (covenant not to sue divested court of jurisdiction over defendants' invalidity and unenforceability counterclaims notwithstanding "evidence indicating that the inventor named in the [patent at issue] may have misappropriated the idea for the invention from others"); *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 892 F. Supp. 2d 1226, 1231 (N.D. Cal. 2012) ("there must be an 'adverse legal interest' for there to be declaratory judgment jurisdiction"), *aff'd*, 538 F. App'x 894 (Fed. Cir. 2013).  Mr. Bierman's covenant not to sue extinguishes any controversy with respect to the only legal right Acer has suggested his conduct threatens – whether Mr. Bierman should be listed as an inventor on the '713 Family of Patents.  Thus, even accepting Acer's allegations as true, it is irrelevant whether "Intellisoft and Mr. Bierman contend that Mr. Bierman should have been named as an inventor on the '713 Patent Family," Acer Compl. ¶ 52; *see id.* ¶¶ 15, 55; "Intellisoft and Mr. Bierman, through their expert Mr. Rappaport, have now clearly stated that Mr. Bierman should have been named as an inventor on the '713 Patent Family," *id.* ¶ 54; *see also id.* ¶¶ 2, 30; or "Intellisoft and Mr. Bierman are claiming that Mr. Bierman should be a named inventor on the '713 Patent Family in an effort to collect damages against Acer," *id.* ¶ 56; *see also id.* ¶¶ 18, 35, 38.  And, "[i]n the absence of a controversy as to a legal right," Acer's purposed financial and reputational interests in a declaration on inventorship are also "insufficient to create declaratory judgment jurisdiction." *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374-75 (Fed. Cir. 2011).

Because there is no substantial controversy as to the legal question of inventorship, this Court lacks subject-matter jurisdiction to issue the declaratory judgment Acer requests. In suggesting otherwise, Acer invites the Court to ignore the Federal Circuit's clear precedent vacating decisions predicated on putative inventorship controversies later found to be insufficient to support subject-matter jurisdiction – in this very case and otherwise.  *See StoneEagle Servs., Inc. v. Gillman*, 746 F.3d 1059, 1064 (Fed. Cir. 2014) (vacating preliminary injunction on the basis that there was no actual controversy over the inventorship of the patent at issue and plaintiff

1   did not plead any other facts that "would give rise to another cause of action properly before a

2   federal court"); *see also In re Nwogu*, 570 F. App'x 919, 921 (Fed. Cir. 2014) ("A function

3   of mandamus 'is to assure that a trial court complies with the spirit as well as the letter of the

4   mandate issued to that court' by a court of appeals." (quoting *In re Cont'l Ill. Secs. Litig.*, 985 F.2d

5   867, 869 (7th Cir. 1993)). The Court should decline the invitation and dismiss this case for lack of

6   subject-matter jurisdiction.

7   **3.** The Federal Circuit's statement that Acer – had it respected state procedure and

8   been denied leave to file its counterclaim in state court – could have filed a declaratory judgment

9   action in federal court does not support any argument that this Court has jurisdiction over Acer's

10   complaint. That statement was made in rejecting Acer's proposed construction of a removal

11   statute, which provides that a civil action "in which any party *asserts* a claim for relief" under the

12   patent laws "may be removed." 28 U.S.C. § 1454 (emphasis added). Acer argued that "regardless

13   of whether [its counterclaim] was legally operative" the counterclaim was "asserted" for purposes

14   of § 1454. Acer further argued that allowing state procedural rules to govern whether a claim was

15   "asserted" and an action could therefore be removed would undermine congressional policy to

16   avoid litigation of federal patent issues in state court.

17   The Federal Circuit rejected that argument. "Denying leave to file a federal patent

18   counterclaim in state court is fully consistent with the policy that patent claims should not be

19   litigated in state courts," since such a denial would mean that the state court would not adjudicate

20   the federal claim. *Intellisoft*, 955 F.3d at 935. And that would not deprive a plaintiff with a valid

21   federal claim of a federal forum, since it could bring the federal patent claim in federal court. *Id.*

22   That reasoning says literally nothing about whether the complaint that Acer actually filed

23   implicated federal court jurisdiction. On the contrary, the Federal Circuit flatly rejected Acer's

24   argument that its amended counterclaim, filed in federal court in the first instance, supported

25   removal. *See id.* ("[i]t is only the pleading operative at the time the petition to remove was filed

26   . . . that is relevant"). Accordingly, the Federal Circuit did not even consider whether the district

27   court had jurisdiction over that amended counterclaim, and its holding (discussed above) that the

28   state-court action did not depend on the resolution of any substantial question of federal patent law

forecloses Acer's contrary arguments here.

**4.**     Assuming, for the sake of argument, that there were a colorable basis for jurisdiction here, it would be an abuse of discretion to entertain Acer's declaratory-relief action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also United States v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) ("The Declaratory Judgment Act does not grant litigants an absolute right to a legal determination.").

"Prudential guidance" for exercising the Court's discretion "is found in *Brillhart v. Excess Ins. Co. of America* . . . , and its progeny, [*Wilton*]." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citation omitted).  The Brillhart Court articulated three factors that courts should consider; key among those is discouraging forum shopping.  *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011).  Other factors include "avoiding needless determination of state law issues," and "avoiding duplicative litigation." *Id.*  In addition, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Washington*, 759 F.2d at 1357; *Dizol*, 133 F.3d at 1225 & n.5 (considering "whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue"); *t'Bear v. Forman*, 359 F. Supp. 3d 882, 903 (N.D. Cal. 2019) (declining to entertain declaratory action where factual dispute was "not material to Plaintiff's breach of fiduciary claim in the absence of evidence in support of such a breach").

These considerations would independently foreclose exercise of jurisdiction in this case.

*First*, Acer's declaratory action is forum shopping.  *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371-73 (9th Cir. 1991) (reversing exercise of jurisdiction because application of the *Brillhart* doctrine was appropriate to discourage forum-shopping), *overruled on other grounds by Dizol*, 133 F.3d at 1220.  Courts often dismiss complaints seeking declaratory judgment where they are "reactive" to state actions[7] or were filed to evade a less-favorable state forum.  *See Cont'l*

---

[7] A suit is defensive or reactive "when a party files a federal declaratory judgment suit 'to see if it might fare better in federal court at the same time the [party] is engaged in a state court action.'" *Travelers Indem. Co. of Conn. v. Newlin*, 2020 WL 5517591, at *10 (S.D. Cal. Sept. 14, 2020) (quoting *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999));

1    *Cas. Co.*, 947 F.2d at 1371 ("if a declaratory judgment suit is defensive or reactive, that would

2    justify a court's decision not to exercise jurisdiction."); *R.R. St.*, 656 F.3d at 976 ("federal courts

3    should generally decline to entertain reactive declaratory actions"); *Cont'l Airlines, Inc. v.*

4    *Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524 (9th Cir. 1987) (affirming dismissal of

5    declaratory action and explaining federal courts "have special jurisdictional discretion . . . to

6    prevent parties from using the Declaratory Judgment Act . . . to circumvent the removal statute or

7    to create a race to judgment"); *Krieger*, 181 F.3d at 1119 (affirming exercise of discretion to

8    prevent defendants "who ha[d] not fared well in the three summary judgments" in one action

9    "from wiping the slate clean and starting this litigation anew in" another forum on the eve of trial).

10   Thus, in *International Ass'n of Entrepreneurs of America v. Angoff*, 58 F.3d 1266 (8th Cir. 1995),

11   the Eighth Circuit affirmed the district court's decision to decline jurisdiction where the plaintiff

12   had attempted to "circumvent the removal statute's deadline" and filed its declaratory action only

13   after its untimely removal petition was denied, *id.* 1270.[8]

14           That is precisely what Acer has done.  As the state court recently found in denying Acer's

15   motion for leave to file its cross-complaint, "from the beginning of this case, it was plain that

16   Intellisoft would contend that Bierman invented technology disclosed by Acer's patents."  Ex. 1,

17   Order at 4.  A year before it sought removal, Acer claimed in its motion for summary judgment

18   that Mr. Bierman's claim to have conceived the ideas that led to the '713 Patent was fabricated.

19   Acer itself also "raised issues concerning the applicability of patent law concepts to [Intellisoft's]

20   case and the introduction of patent related evidence at trial through a motion in limine," *id.*, which

21   the state court denied.  Yet Acer waited till the eve of trial in 2017 – after it had "experiment[ed]

22

23   *see also Clay Reg'l Water v. City of Spirit Lake, Iowa*, 193 F. Supp. 2d 1129, 1153 (N.D. Iowa
     2002) (describing as reactive cases where a "state court defendant . . . initiate[s] a federal court

24   suit based on federal question jurisdiction against the state court plaintiff" where the defendant
     could not remove the case to federal court) (citation omitted).

25           [8] *See also Machat v. Sklar*, 1997 WL 599384, at *5 (S.D.N.Y. Sept. 29, 1997) ("Machat's

26   failure to properly remove weighs heavily in favor of abstention") (citing *Continental Airlines*,
     819 F.2d at 1524); *Clay Reg'l Water*, 193 F. Supp. at 1153 ("The fact that the District originally

27   brought its section 1983 claim in state court, only to dismiss it and raise it as a ground for
     declaratory relief in federal court—a judgment that would have significant impact on the parties'

28   postures in state court—raises the specter of forum shopping.").

on [its] case in the state court," *Rosenthal v. Coates*, 148 U.S. 142, 147 (1893) – to file a removal petition.  And following the Federal Circuit's decision to remand the case, Acer only filed the instant declaratory action in federal court after the state court denied its belated motion for leave.  Acer's reactive forum-shopping supplies a sufficient basis to dismiss.

*Second*, for all the reasons above, this declaratory action will serve no "useful purpose in clarifying the legal relations at issue."  *Dizol*, 133 F.3d at 1225 & n.5.  Indeed, in denying Acer's motion for leave, the state court reasoned that because "[a]ll parties agree that the patents at issue are all expired, and Intellisoft and Bierman filed covenants not to sue concerning inventorship," Acer's need for a declaratory judgment was "questionable."  Moreover, Intellisoft has clearly stated that its expert, Mr. Rappaport, "will not offer testimony . . . that Mr. Bierman (or Intellisoft, Ltd.) should have been named as an inventor or a co-inventor on any of the subject patents" or "that Bierman or Intellisoft, Ltd. has a legal inventorship claim under the federal patent laws."  Dkt. 48 at 37 (Rappaport Decl. ¶ 3).  And Acer's claim that Intellisoft intends to "try numerous other patent law issues, including patentability, patent validity, claim construction, and patent infringement," Acer Compl. ¶ 39, is incorrect, as explained above.  Acer faces no "possibility of irreparable prejudice," thus dismissing this case would be consistent with "the Declaratory Judgment Act's purpose of enhancing judicial economy and cooperative federalism."  *R.R. St.*, 656 F.3d at 975.

### CONCLUSION

The Court should dismiss Acer's declaratory action under Rule 12(b)(1) for lack of jurisdiction.  Alternatively, the Court should exercise its discretion under the Declaratory Judgment Act to decline to entertain Acer's action.

1    DATED:  January 22, 2021            Respectfully Submitted,

2

3                                        By:   */s/ Aaron M. Panner*
                                               Aaron M. Panner
4                                              Counsel for Defendants
                                               KELLOGG HANSEN TODD FIGEL &
5                                                 FREDERICK, P.L.L.C.
                                               1615 M Street, N.W. Suite 400
6                                              Washington, DC 20036
                                               TEL: (202) 326-7900
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS; CASE NO. 4:20-cv-08608